UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 6:23-cr-39-REW-HAI-1 |
| | ) | |
| v. | ) | OPINION & ORDER |
| | ) | |
| ANDIS WITHERSPOON, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Andis Witherspoon is charged, as relevant here, with violations of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A). Following the Sixth Circuit's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), Witherspoon filed the instant motion to dismiss those counts, challenging their constitutionality under *Williams* and *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See* DE 41. The Government responded in opposition, *see* DE 49, and Witherspoon replied, *see* DE 53. Following an evidentiary hearing, *see* DE 72, the Court finds Witherspoon dangerous under *Williams* and properly disarmed under the statutes at issue. The Court **DENIES** DE 41.

  I.  Analysis

    a.  922(g)(1)

Witherspoon brings a facial and an as-applied challenge to § 922(g). The Court disposes of the facial challenge in short order. "Because . . . most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge." *Williams*, 113 F.4th at 657. Nothing more needed. While Witherspoon offers a good faith argument for a contrary ruling, *see*

1

DE 41-1 at 7–15, those arguments, as Witherspoon himself recognizes, are not for this Court to entertain. *Williams* binds the Court on any facial challenge to § 922(g)(1).

To resolve Witherspoon's as-applied challenge, the Court turns to the bulk of *Williams*'s holding. *Williams* establishes a framework for resolving as-applied Second Amendment challenges to § 922(g). It begins its march with the broad proposition that 922(g) is "constitutional on its face and as applied to dangerous people." *See Williams*, 113 F.4th at 662–63. The legislative link between, *e.g.*, being a felon and thus being "presumptively dangerous," *id.* at 657, usually sticks. However, *Williams* found that our nation's history and tradition often allowed such individuals to "regain their right to possess arms" by "proving they aren't dangerous." *Id.* at 662. That inquiry, rooted in historical practice and legal tradition, now rests with the district courts. *See id.* at 663. Thus, when faced with an as-applied § 922(g) challenge, a reviewing court must make "fact-specific dangerousness determinations after taking into account the unique circumstances of the individual defendant, including details of his specific conviction." *Id.* Because 922(g) is "presumptively lawful," the defendant must offer sufficient evidence to rebut the presumption that § 922(g) is constitutional, as applied to him. *See id.* at 662–63.  An individual in "a disarmed class" must "prove they aren't dangerous in order to regain their right to possess arms." *Id.*

That raises several questions for courts administering *Williams*. First, what information should the court consult in making the determination and how broad, temporally and otherwise, is the query? *Williams* offers some answers. In assessing dangerousness, courts may "consider a defendant's entire criminal record—not just the specific felony underlying" the § 922(g)(1) conviction and may also consider "other judicially noticeable information—such as prior convictions. . . ." *Williams*, 113 F.4th at 659–60. Further, "courts may wish to consider information beyond the criminal convictions," such as a civil restraining order, *see id.* at 658 n.12, though the

2

extent to which peripheral information could be relevant to the analysis remains an open question. *See id.*

The touchstone of the analysis is the defendant's criminal record—any putatively disqualifying felony(ies) and other cognizable records. The "entire criminal record—not just the predicate offense" warrant focus. *See id.* at 657. And while courts may consider other relevant information (pending further guidance), to date, most courts are resolving challenges on the record alone, as *Williams* did. *See United States v. Goins*, 118 F.4th 794, 804–05 (6th Cir. 2024) (resolving an as-applied § 922(g) challenge with reference to the defendant's past criminal conduct). Here, the Court gave Williams a chance to offer specific and individualized proof on his danger, and he marshalled proof from all prior felonies and from his intervening life. The Government potentially sought to rely on conduct all the way up to and including that behind the instant charges. Problems lurking in that exercise need not be resolved in this case, which is not a close one.[1]

Second, what convictions qualify as 'dangerous'? *Williams* envisions three "categories" of crimes for analysis in determining the answer. The first are "crimes against the person" including, but not limited to, murder, rape, assault, and robbery. *See Williams*, 113 F.4th at 658. The second class involves crimes that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," with drug trafficking serving as a "prime example" and burglary as another. *See id.* at 659. While crimes in the first two classes are not necessarily "dispositive" to a

---

[1] Thus, the Government cited *Goins* and balked at a pre-trial ruling on a motion that, under Rule 12(b)(1), purportedly could not be determined without a trial on the merits. The thinking is that the United States wants to point to the instant offenses as confirming dangerousness, and that only a trial can resolve the facts behind the instant offenses. True enough, *Goins* referenced the very circumstances at issue in the precipitating case against Defendant Goins. *See* 118 F.4th at 804. The Court sees no need to venture into the issue. If a particular case hinged on instant charges, and if contemporary conduct is part of the dangerousness rubric, the matter might ripen. This case, instead, focuses on whether Witherspoon's record is properly disqualifying.

dangerousness finding, a defendant convicted of crimes in either bucket will "have a very hard time, to say the least, of showing he is not dangerous." *Id.* at 663. Finally, a "more difficult category" of crimes involves those that "pose no threat of danger, like mail fraud, tax fraud, or making false statements." *See id. Williams* augurs that this category will be the most fertile ground for the presumptively disarmed: "[C]ourts will have no trouble concluding that many of these crimes don't make a person dangerous." *Id.* at 659.

Most of *Williams* indicates that the disqualifying crime is the determinant. The decision repeatedly references the "predicate offense," *id.* at 657, "past convictions," *id.* at 658, the "specific felony underlying his 922(g)(1) conviction," *id.* at 660, and the "crimes," *id.* at 659. However, the decision also calls the process "fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 660. The rebuttal chance is the defendant's "reasonable opportunity to prove that they don't fit the class-wide generalization." *Id.* at 661. Given the Circuit's language and repeated as-applied rulings without a hearing, the Court is reluctant to treat the rebuttal window as one broadly encompassing, *e.g.*, rehabilitation, present character, or interim correction. The notion of a constitutional disqualification (at the time of the prior conviction) somehow transforming into an unconstitutional disqualification, because the defendant transitioned from dangerous to nondangerous, seems problematic. A felony with disqualifying force is not, it seems, a tattoo that fades with the passage of time. Still, *Williams* often employs the present tense on the issue of danger, and its reference to the inert mechanism in § 925(c)[2] makes this an open question, to some degree.

---

[2] That statute, inactive because unfunded, does seem to require consideration of the disqualifying crime, personal history/reputation, and prospective risk at the time of potential restoration. *Williams* does not import those standards, but they are what Congress specified for the AG's rubric.

Now to Witherspoon. To overcome the presumption, he points to the absence of violent conduct in his previous drug-trafficking convictions and posits that the length between the past convictions and his present charges dulls any lingering dangerousness. Neither persuades.

Witherspoon is dangerous under *Williams.* Look to his criminal record: In a span of seven years (from 2006–13), Witherspoon amassed five distinct felony convictions, mostly characterized as drug trafficking crimes. Witherspoon's felony endeavors began in 2006, where he pled guilty in Kentucky state court for Trafficking in a Controlled Substance in the First Degree While in Possession of a Firearm and Criminal Mischief in the First Degree. *See* Hrg. Ex. 1C. Later that year, Witherspoon also pled guilty to Possession of a Controlled Substance in the First Degree. *See* Hrg. Ex. 2C. Just a year later, he found himself again in Kentucky state court on a conviction for Trafficking in Controlled Substance in the First Degree. *See* Hrg. Ex. 3C. Following a seven-year break in criminality—most of which (to 2011, it seems, based on parole records) was spent incarcerated—Witherspoon picked back up his drug trafficking conduct. In 2014, he pled guilty, under separate indictments, to Trafficking in a Controlled Substance in the First Degree, and to Persistent Felony Offender in the Second Degree. *See* Hrg. Ex. 4C; 5C. The last batch involved four trafficking instances in February and March of 2013. A long sentence ensued, with Witherspoon again paroled in 2017. The instant offenses center on alleged armed trafficking conduct in 2023. *See* DE 1.

Witherspoon does not shy away from his criminal conduct. He recognizes that his burden of overcoming the presumption of dangerousness on this record is "heavy" and concedes that his drug trafficking convictions fall into the second class of crimes under *Williams*—those that pose "a significant threat of danger" to the public. *See Williams*, 113 F.4th at 659, 663. He argues, however, that none of those crimes resulted in direct physical harm to another person. The defense

5

called investigator Carl Christiansen to testify that, on his review, none of Witherspoon's past convictions involved physical violence. *See* DE 71. They were simply, as Witherspoon spins it, "routine drug trafficking" convictions, which caused no physical harmed.

Witherspoon's focus on physical violence takes too narrow a view of "dangerousness." Authorities recognizing the inherent dangers presented by drug trafficking—even "non-violent" trafficking—are legion, including *Williams*. *See, e.g.*, *Williams*, 113 F.4th at 659 ("Drug trafficking is a serious offense that, in itself, poses a danger to the community.") (citations omitted); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence."); *United States v. Evans*, No. 5:23-CR-00034-DCR-MAS, 2023 WL 5827570, at *5 (E.D. Ky. Sept. 8, 2023) ("The danger-to-the-community factor [of the Bail Reform Act] is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community.") (cleaned up); *United States v. Young*, No. 3:98-CR-00038-13, 2020 WL 6702871, at *3 (M.D. Tenn. Nov. 12, 2020) ("The nature of his danger is not only from violence, it is also from drug trafficking and directing others in drug trafficking. Both create further and independent dangers to the community. . . ."). Clearly, whether violent or not, drug trafficking implicates a level of dangerousness. As *Williams* conceived of it, trafficking does "not always involve an immediate and direct threat of violence against a particular person," but most such crimes "put someone's safety at risk, and thus, justify a finding of danger." *Williams*, 113 F.4th at 659.[3]

Indeed, district courts facing *Williams* challenges by defendants with only drug trafficking convictions have uniformly found the particular defendant dangerous. *See e.g.*, *United States v.*

---

[3] As Don Corleone said in declining Sollozzo's invitation to enter the drug trade, in *The Godfather*: "But your business . . . is a little dangerous." THE GODFATHER (Paramount Pictures 1972).

6

*Bell*, No. 2:20-CR-20336, 2024 WL 4589812, at *5 (E.D. Mich. Oct. 28, 2024); *United States v. Gaither*, No. 3:23-CR-189, 2024 WL 4567281, at *2 (N.D. Ohio Oct. 24, 2024); *United States v. Lownsbury*, No. 5:22-CR-41, 2024 WL 4264970, at *7 (N.D. Ohio Sept. 23, 2024). If there is a non-dangerous drug trafficking conviction under *Williams*, it has not surfaced.

Witherspoon detailed his convictions with underlying charging and complaint details. The Court certainly can, given crime elements on a stark record, make "an informed judgment about how criminals commonly operate." *Williams*, 113 F.4th at 660 (quotation omitted). Here, though, specifics of great concern emerge. The trafficking incidents reflect repeated, recidivist cocaine dealing in windows from 2005–06 and in early 2013. The primary disqualifying felony (06-76) included a Kentucky aggravator for firearm possession. That statute, KRS 218A.992, applies only when a person commits a drug crime and who "at the time of the commission of the offense and in furtherance of the offense, was in possession of a firearm." Kentucky calls this statute one "reflecting the dangerous nature of a crime perpetrated by an armed criminal." *Smallwood v. Commonwealth*, No. 2002-CA-001743-MR, 2003 WL 22520011, at *1 (Ky. Ct. App. Nov. 7, 2003). Witherspoon engaged in armed dealing. When arrested, he kicked out the cruiser window and escaped, yielding the felony criminal mischief conviction. Although the later convictions do not involve firearms, they show enduring, obdurate attachment to drugs and trafficking. Simply put, the felony trafficking roster, from beginning to end, strongly confirms the propriety of disarmament of the dangerous Witherspoon. The Court also notes that a) the last convictions occurred within ten years of the current charged conduct, b) Witherspoon was intermittently on parole during the second set of convictions; and c) the parole terms from all felonies extended to

7

the time of the current charged conduct. That means, to the Court, that the prior felonies have obvious vitality as markers of dangerousness then, in the interim, and now.[4]

That one of Witherspoon's drug trafficking convictions also involved use of a deadly weapon obviously is confirmatory. *See Gaither*, 2024 WL 4567281 at *2; *United States v. Hamler*, No. 1:21-CR-127, 2022 WL 798860, at *3 (S.D. Ohio Mar. 16, 2022) ("Drug trafficking is dangerous, and when firearms are involved, those dangers increase exponentially."). As to the trafficking only crimes, the Court treats trafficking as indicative of danger. The confirmed felonies here involve intended distribution of cocaine to the streets. Drug dealing, as to the destabilizing substance itself, the community impact, and the all-too common risk of attendant violence, puts "someone's safety at risk, and thus justif[ies] a finding of danger." *Williams*, 113 F.4th at 659. That Witherspoon's offenses show typicality is more, not less confirmatory of danger. The defense did nothing to explain why crimes normally presenting significant risk here, on the particular facts of the convictions, would not.

Finally, Witherspoon attempts to distance himself from his early convictions, arguing that their age mitigates intervening dangerousness. Courts applying *Williams* have yet to reach a uniform answer on whether a conviction's age affects the dangerousness calculus. *Compare Gaither*, 2024 WL 4567281, at *2 ("No Sixth Circuit authority regarding as-applied challenges to § 922(g)(1) mentions the age of the prior convictions upon which the court relied."), *with United States v. Jennings*, No. 2:24-cr-20173-TBG-EAS, 2024 WL 4560602, at *4 (E.D. Mich. Oct. 24,

---

[4] It seems that several of the predicates likely would meet the "serious drug offense" definition within the ACCA, in § 924(e)(2)(A). That statute, when applicable, directly signals the observed heightened danger when a repeat (three-time) trafficker possesses a firearm. As the Supreme Court observed in *Brown v. United States*: "ACCA is a recidivist statute that gauges what a defendant's 'history of criminal activity' says about his or her 'culpability and dangerousness.'" 144 S. Ct. 1195, 1204 (2024). Repetition flags intensified danger; because "defendants who have repeatedly committed ACCA predicate offenses are 'especially likely to inflict grave harm when in possession of a firearm,' ACCA imposes a higher punishment when they do so." *Id.* at 1205 (citations and quotations omitted).

2024) ("Common sense . . . strongly suggests older convictions should be given less weight."). *Williams*, though frequently referencing the foundational felony, does not elucidate. Nonetheless, the Court need not resolve the issue because Witherspoon's persistent criminality obviates the issue. Had Witherspoon hung up his criminal hat in 2006, the argument might have more attraction; but he did not. Instead, post-prison and during parole, he turned back to the exact same conduct in 2013, on multiple occasions. Such persistence indicates dangerousness without dissipation. Further, Witherspoon's parole status confirms that these convictions currently blanket him, as he now sits revoked for parole violations as to all five of his past drug trafficking convictions. *See* DE 74-1. "This is the recent, not distant, past." *Gaither*, 2024 WL 4567281, at *2.

As to the new character and conduct proof, the Court accepts Janet Cunningham's positive work reviews and Christiansen's report of family vouching. Most people are capable of avoiding crime for the duration of work shifts or in the context of specific familial relationships. The Court does not view the offered proof as diminishing, to any significant degree, the dangerousness reflected in the enumerated felonies. Whether any passage of time, with salutary conduct, can do that work is not a question presented in or called for as to this clear case.

Thus, an individualized assessment of Witherspoon's prior convictions resolves the issue. Witherspoon's felony drug trafficking record renders him dangerous under *Williams*, and he fails to overcome the presumption. The § 922(g) charge is constitutional as applied to him.

### b. 924(c)

Witherspoon's § 924(c) challenge calls for a distinct analysis. Initially, *Williams* does not address constitutional challenges to § 924(c) charges. The parties do not dispute the point, *see* DE 49 at 4; DE 53 at 5, and the Court concurs. Thus, the Court looks to *Bruen* rather than *Williams*.

9

Witherspoon argues that his § 924(c) charge is unconstitutional under *Bruen* for lack of a sufficient historical analogue. He argues that because our nation did not criminalize drug possession for most of its early history, it could not, by extension, have routinely prohibited carrying a firearm in connection with drug trafficking crimes. *See* DE 41-1 at 16–17.

Despite the cart, the Court sees no sign of the horse. In consolidating the Second Amendment inquiry into a single, history-rooted examination, *Bruen* left intact an integral first step: A court facing a Second Amendment challenge must first determine whether the "regulated conduct falls beyond the [Second] Amendment's original scope." *United States v. Burgess*, No. 22-1110, 2023 WL 179886, at *5 (6th Cir. Jan. 13, 2023) (citing *Bruen*, 142 S. Ct. at 2127). Only if the court determines that the regulated conduct implicates the Second Amendment does it look to whether the regulation is consistent with the nation's history and tradition of firearm regulation. *See Bruen*, 142 S. Ct. at 2130.

Witherspoon dodges this first step, and to his detriment. The Sixth Circuit, along with several others, upheld 924(c) (or its Sentencing Guidelines parallel, U.S.S.G. § 2D1.1(b)(1)) pre-*Bruen* on the theory that the Second Amendment, originally understood, "did not extend to possession of weapons for unlawful purposes." *United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012); *see also United States v. Bryant*, 711 F.3d 364, 370 (2d Cir. 2013); *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) (per curiam); *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009). Because *Bruen* did not vitiate this threshold inquiry, several circuits, including the Sixth, have re-affirmed pre-*Bruen* § 924(c) and § 2D1.1(b)(1) precedent on this theory. *See Burgess*, 2023 WL 179886, at *5 ("*Bruen* did not disturb that step-one analysis. *Bruen* instead referred repeatedly to the rights of '*law-abiding* citizens.'") (emphasis original); *United States v.*

10

*Cash*, No. 22-2713, 2023 WL 6532644, at *3–4 (3d Cir. Oct. 6, 2023); *In re Terry*, No. 22-13615-C, 2022 WL 20033240, at *2 (11th Cir. Nov. 14, 2022).

Witherspoon does not seriously grapple with this authority, wading into the historical depths without first justifying the trek. Granted, *Burgess*, as an unpublished case, does not technically compel this result. *See Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 944 (6th Cir. 2020) (unpublished cases are not "precedent"). But with such unanimity, persuasiveness generally follows. Until told otherwise, the Court follows *Burgess*, noting *Williams*'s liminal description of the Second Amendment right: "This right protects the ability to keep, for 'lawful purposes,' the kinds of weapons in common usage[.]" *Williams*, 113 F.4th at 643. Toting a gun to further drug trafficking is not possession for a lawful purpose. Section 924(c) is constitutional under the Second Amendment, facially and as applied to Witherspoon.[5]

For the foregoing reasons, the Court **DENIES** DE 41.

This the 18th day of November, 2024.

Signed By:
*Robert E. Wier*  REW
United States District Judge

---

[5] The Court does not need to delve into the history, though it doubts significant difficulty in treating regulation of armed trafficking as relevantly similar to other laws aimed at disarming the actively dangerous. Laws "barring people from misusing weapons to harm or menace others," referenced in *United States v. Rahimi*, 144 S. Ct. 1889, 1899 (2024), surely supply an analog for a law barring a drug trafficker from possessing a firearm to further that crime. If the law can disarm "not only brigands and highwaymen," the Court expects a trafficker armed to empower the crime could face the same prohibition. *See id*. That decision, though, the Court defers given inapplicability of the Second Amendment to possession for an unlawful purpose.