UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 6:23-cr-39-REW-HAI |
| ANDIS WITHERSPOON, | ) ) | OPINION & ORDER |
| Defendant. | ) ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Andis Witherspoon moves to suppress electronically stored information retrieved from two iPhones and a dash camera seized by authorities following a traffic stop. *See* DE 66. The Court referred the motion to Magistrate Judge Hanly A. Ingram for further proceedings. *See* DE 68. The parties briefed the matter, and thereafter, Judge Ingram held an evidentiary hearing. *See* DE 88. Following the hearing, Judge Ingram recommended that the Court deny the motion, finding that Witherspoon failed to prove constitutional unreasonableness in the Government's handling. *See* DE 90. Witherspoon objected to the recommendation, *see* DE 92, and the Government responded in opposition to the objection. *See* DE 96. The matter is now ripe for review. Because Witherspoon does not show a Fourth Amendment violation, the Court **OVERRULES** Witherspoon's objection, DE 92, **ADOPTS** Judge Ingram's report and recommendation, DE 90, and **DENIES** Witherspoon's suppression motion, DE 66.

I. **Background**

The indictment charges Witherspoon with three counts related to methamphetamine distribution, two counts of possession of a firearm in furtherance of a drug trafficking offense, and

one count of possession of a firearm by a convicted felon. *See* DE 1. August 18, 2023, is the charge date on three of the counts. *See id.*

The factual background, at least for purposes of this motion, is not in dispute. On Friday, August 18, 2023, officers conducted a traffic stop of Witherspoon's Kia Sorento on I-75 South in Rockcastle County, KY. *See* DE 95 at 7–8. During the traffic stop, a K-9 alerted to the back door of the vehicle, and a subsequent search of the car uncovered two Chex Mix bags under the back floorboard, later determined to be filled with methamphetamine; a zip-lock bag of crystal substance, also determined to be methamphetamine; a loaded Taurus 40-caliber pistol; three iPhones (one black, one white, and one blue); and a dashcam. *See* DE 66-3 at 7–8. This motion concerns only three of those items: the black iPhone, the white iPhone, and the dashcam. *See* DE 66-1 at 5–6. Officers seized the items on August 18, and Kentucky officers arrested Witherspoon. *See id.* at 7–9.

That same day, Task Force Officer Brian Lewis, who testified at the evidentiary hearing, took possession of the phones and the dashcam. *See* DE 95 at 9. Following standard protocol, he kept the phones powered on, in airplane mode, plugged in, and placed them in a signal-blocking bag designed to prevent remote data wiping. *See id.* at 9–10.

Assistant United States Attorney Pearce Nesbitt later decided to bring Witherspoon's case before a federal grand jury for indictment. *See* DE 95 at 10. He and Lewis chose this option, instead of the federal complaint they were drafting, because the grand jury soon met. At the time of the seizure, the next grand jury presentation was scheduled for August 24, 2023, six days after the traffic stop. *See id.* at 10–11. The two planned to present the case to the grand jury on that day, requiring Lewis to log evidence, complete case reports, and prepare for the presentation. *See id.* Nesbitt and Lewis presented the case to the grand jury on August 24, *see id.*, and later that day,

Lewis received information indicating that evidence concerning Witherspoon's case would also be present in a safe located in a storage unit in Louisville, KY. *See* DE 95 at 12–13. Lewis turned around a warrant application for the storage unit the afternoon of August 24, and the unit was searched later that night and into the morning of August 25. *See id.* at 11.

Then, Lewis prepared a warrant application for the two cell phones and the dash camera. *See* DE 95 at 13. On August 28, 2023, ten days (five business days, given bracketing weekends) after the arrest, Lewis sent Nesbitt a first draft of an affidavit in support of the search warrants, and after editing, the warrant applications were submitted to the Court on September 1, 2023. *See id.* Judge Ingram reviewed the applications and ultimately issued a search warrant for the black iPhone, the white iPhone, and the dashcam on September 11, 2023. *See* DE 66-3; 66-4; 66-5. A fourth warrant, for a phone seized from Witherspoon's passenger (the blue iPhone), the United States dropped.

Lewis extracted the dashcam footage from the camera's SD card "as soon as time permitted" following warrant issuance and transferred possession of the two iPhones to ATF Special Agent Cassandra Mullins on September 22, 2023, for extraction. *See* DE 95 at 21–22. SA Mullins discovered that the phones were protected by a six-digit passcode, which required her to send the phones to ATF's forensics branch in Sterling, Virgina for special extraction. *See id.* at 32. She shipped the phones, after receiving a secure package from the forensics office, on September 28, 2023. *See id.* The office received the phones on October 4 and completed the extraction on October 30. *See id.* at 33. SA Mullins testified that the three-week turnaround for the phones was "quick." *See id.* at 41.

Witherspoon challenges the reasonableness of the interval separating seizure and warrant issuance. He argues, on Fourth Amendment grounds, that the twenty-four days separating Lewis's

3

seizure of the three devices and the September 11 warrant issuance, amounts to a constitutionally unreasonable period of delay, warranting suppression. *See* DE 92 at 9–11. He dropped other timing concerns, such as the delay prior to actual execution, originally presented to the Magistrate Judge.

## II.     Legal Standard

When a party properly objects to a magistrate judge's recommendation, the Court reviews those portions *de novo*. *See* 28 U.S.C. § 636(b)(1)(C) (requiring "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* However, the Court need not conduct "review of a magistrate[] [judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985). The Court tailors its analysis accordingly.

The Fourth Amendment prevents the government from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. Undoubtedly, police may "seize an item based on probable cause in order to secure a search warrant for it." *United States v. Sykes*, 65 F.4th 867, 877–78 (6th Cir. 2023) (citing *United States v. Respress*, 9 F.3d 483, 486 (6th Cir. 1993)). Nonetheless, a once-valid seizure may still "violate the Fourth Amendment because its manner of execution unreasonably infringes on possessory interests." *United States v. Jacobsen*, 104 S. Ct. 1652, 1662 (1984). In determining whether the government's infringement upon an individual's possessory interest was reasonable, and thus constitutional, a court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (citing *United States v. Place*, 103 S. Ct. 2637, 2642 (1983)).

The factors a court should consult in weighing the relevant interests are not set in stone. However, courts consistently address whether the individual consented to the seizure, the significance of the government's interest in retention, the significance of the individual's possessory interest, the diligence of the investigators, and the length of the delay. *See Place*, 103 S. Ct. at 2637; *Sykes*, 65 F.4th at 878; *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012). As with any Fourth Amendment inquiry, though, the "touchstone" is reasonableness. *Michigan v. Fisher*, 130 S. Ct. 546, 548 (2009).

**III.    Analysis**

Of the factors bearing on reasonableness, just one weighs in Witherspoon's favor. There's no dispute that Witherspoon did not consent to the search, as Judge Ingram noted in his analysis. *See* DE 90 at 7. But as for factors favorable to Witherspoon, that's the total list.

The Government's interest in evidence collection looms large. The Government had probable cause to believe that evidence of the crime would be found on all three devices. That supportable suspicion weighs heavily in the Government's favor. *See United States v. Glatz*, No. 3:19-CR-218-TAV-DCP, 2023 WL 4503981, at *34 (E.D. Tenn. May 1, 2023) (finding that law enforcement had strong interest in retaining cellphone and SD card for over 18 months because it had probable cause to believe CSAM and evidence of solicitation of a minor were present); *see also United States v. Sullivan*, 797 F.3d 623, 634 (9th Cir. 2015) ("[T]he government had a reasonable basis for retaining and searching the laptop based on the likelihood that it contained evidence of Sullivan's parole violations, as well as child pornography."); DE 92 (Witherspoon's Objection) at 3 ("A strong government interest can justify an extended seizure.") (citing *Illinois v. McArthur*, 121 S. Ct. 946, 950 (2001)). That interest was exorbitantly high for the black iPhone, which at the time of the seizure was using the maps application to direct Witherspoon to the

5

location where he, plausibly, intended to meet a confidential informant to exchange illicit drugs. *See* DE 66-3 at 8. Further, one of the phones was being tracked by an active cell-data warrant, and the dash cam was, logically, capturing the journey toward crime culmination.  As Judge Ingram noted, the "general rule" is that the government "may retain property bearing evidence until after criminal proceedings have terminated." *United States v. Channon*, No. 13-CR-966-JCH, 2014 WL 12788057, at *9 (D.N.M. Sept. 22, 2014); *see also United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013) (holding that once government obtained search warrant for defendant's computer, the government was "presumptively entitled to retain the computer through trial"). That the Government maintained probable cause to search all three devices, confirmed by issuance of a search warrant for each device, heightens the Government's interest and presumptively sanctions retention of the property through the conclusion of Witherspoon's criminal proceedings.

Witherspoon's own possessory interests in the seized items were also severely diminished during the period separating seizure and warrant. Witherspoon was arrested at the scene of the traffic stop, *see* DE 66-3 at 2, and remains in custody to date. *See* DE 13. As *Sykes* puts it, a defendant's possessory interest in his cellphone while incarcerated is "virtually nonexistent." *Sykes*, 65 F.4th at 879; *see also Segura v. United States*, 104 S. Ct. 3380, 3390 (1984) (because defendants were under arrest and in custody of the police throughout the entire time their apartment was occupied by the police, their possessory interest "in the apartment and its contents was, thus, virtually nonexistent"); *Sullivan*, 797 F.3d at 633 ("Where individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced."); *United States v. Clutter,* 674 F.3d 980, 984–85 (8th Cir. 2012) (determining that when defendant was in jail at the time of the seizure of his computer, the seizure "did not meaningfully interfere with his possessory interests"). Witherspoon argues that, despite his confinement, someone else could have

6

retrieved the items but for the seizure. But just as *Sykes* also observed, Witherspoon "never requested that his [property] be returned or turned over to someone else." *See Sykes*, 65 F.4th at 879; *see also United States v. Johns*, 105 S. Ct. 881, 887 (1985) (noting that a defendant who "never sought return of the property" cannot have "alleged, much less proved, that the delay in the search of the packages adversely affected legitimate interests protected by the Fourth Amendment"); *see also Sullivan*, 797 F.3d at 633 ("[Defendant] does not claim that he could have made use of the laptop while incarcerated or that he sought return of his laptop to himself or a third party."). Witherspoon's confinement, coupled with no apparent attempt to effect or transfer possession of the property, diminishes his possessory interest—a critical element in the reasonableness calculus.[1]

The investigation never stagnated or featured unjustified delay either. At every step, authorities actively worked toward the next. Whether it was a complaint draft, an indictment, a warrant, extraction, or analysis, the players all pursued their end goal with diligence. The warrant process only paused initially because Lewis and the U.S. Attorney's office settled on pursuing an indictment of Witherspoon, requiring Lewis to log evidence and finalize his case reports in advance of the next grand jury session. *See* DE 95 at 10, 12. The immediate evidentiary concerns in Louisville intervened, but Lewis, the next business day, turned to device-warrant application. *See id.* at 13–15 (noting that grand jury presentation was on August 24 and warrant applications were submitted on September 1 after at least two rounds of edits); *see also Laist*, 702 F.3d at 616–17 (finding reasonable a twenty-five day delay between seizure of computer and application for warrant, in part, because agent "put the ball in motion" immediately and exchanged several rounds of edits with AUSA in days leading up to application). Nothing suggests that any party

---

[1] The Court obviously is bound by *Sykes*. Witherspoon's argument is preservative, but *Sykes* plainly dictates the weighing of interests here.

unreasonably delayed the process, whatever the next step was, tilting the diligence factor decidedly in the Government's favor. *See* DE 95 at 15–16 (Lewis, a busy agent with other cases, testifying that two weeks from seizure to warrant application was "fairly good turnaround" for electronic search warrants in his experience and that there was no hesitation on whether a warrant should be pursued); *see also Sykes*, 65 F.4th at 878 (finding that delay between seizure and search of cellphone was not because of "indecision or lack of diligence," but instead because of "demands of this and other cases"); *cf. United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) (reversing suppression motion denial because the "government ha[d] no persuasive justification for the delay in obtaining a search warrant" and the "government's only explanation" for the delay was its indecision about where to file for the search warrant). Nothing suggests the sort of stagnation or indecision that might otherwise implicate Fourth Amendment reasonableness.

Finally, the length of the delay also weighs in the Government's favor. Witherspoon stresses that twenty-four days separated the seizure and warrant issuance. *See* DE 92 at 9. But as Judge Ingram explained, the cases in this area sometimes use the dates for warrant application and warrant issuance interchangeably. *See, e.g.*, *United States v. Mitchell*, 565 F.3d 1347, 1351–52 (11th Cir. 2009) (twenty-one days separating seizure and warrant *application*); *Laist*, 702 F.3d at 616 (twenty-five days between seizure and warrant *application*); *Sykes*, 65 F.4th at 877 (forty-two days between seizure and warrant *execution*); *Pratt*, 914 F.3d at 272 (thirty-one days between seizure and *obtaining* warrant). Measuring the period separating seizure and warrant application follows most logically, as any alternative would hold the government responsible for aspects outside its control—namely, the time taken by a judge's chambers to issue a decision on a warrant application. *See United States v. Leon*, 104 S. Ct. 3405, 3417 (1984) ("[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.").

8

If that's the true measure, then the period governing reasonableness is really fourteen days, not twenty-four. *See* DE 95 at 14.  And for Lewis, he submitted draft one to the prosecutor on August 28, an efficient turnaround given the intervening complaint, grand jury processes, and immediate Western District search.  Each day only has twenty-four hours.

But even crediting Witherspoon his preferred calculation, he still fails to identify the constitutional unreasonableness. Witherspoon offers five cases in support of his period of delay argument. *See* DE 92 at 9. Only two of them, *Mitchell* and *Uu*[2], come meaningfully close to the period of delay here. However, both cases featured other factors—particularly, a lack of law enforcement diligence and a higher possessory interest by the defendant—that alter the Fourth Amendment balance. For example, in *Mitchell*, twenty-one days separated the seizure of the defendant's laptop and the application for a warrant. *See* 565 F.3d at 1352. During that time, Mitchell was not incarcerated, and although the government had an interest in searching the laptop and CPU on a belief that it would find CSAM, the only justification for the delay was that the agent simply "didn't see any urgency" in obtaining a warrant and believed that the application could wait two weeks until he returned from training. *See id.* at 1351–52. This case does not feature a comparable—nay, any—lack of diligence. Similarly, in *Uu*—Witherspoon's "best case," *see* DE 92 at 10—Uu was not in custody during the twenty days separating seizure and warrant application, and the government provided "virtually no explanation" for the delay. *See Uu*, 293 F. Supp. 3d at 1214. A lack of defendant custody and missing law enforcement diligence, both factors heavily emphasized by the *Mitchell* and *Uu* courts, separate the two cases from Witherspoon's. Authorities reasonably pursued a warrant application, interrupted only by other matters also relating to this case, and in any event, Witherspoon was detained, foreclosing his possession, for all of it.

---

[2] *United States v. Uu*, 293 F. Supp. 3d 1209, 1214–15 (D. Haw. 2017).

Witherspoon also complains that the Government acted quickly in obtaining a warrant for his storage shed and concludes, by extension, that it could have acted with similar haste as to the three electronic devices. *See* DE 92 at 12. But "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means." *Illinois v. Lafayette*, 103 S. Ct. 2605, 2610 (1983) (internal quotations omitted). That the Government could have, possibly, obtained warrants for the three devices more quickly than it did does not alone amount to a constitutional violation. Moreover, the one-day turnaround for the storage unit warrant fails to account for added time required to prepare individual applications for the three (really four, including the blue iPhone) devices, each demanding probable cause. That burden fell on Lewis, who testified that each warrant application required specific factual support along with corresponding changes in the application affidavit. *See* DE 95 at 28. Just because the work was relatively simple and repetitive, as Lewis also testified to, *see id.* at 25, does not make it any less time-consuming across the targets and particularly in light of competing, case specific tasks. And, within reason, examination of a storage shed out of law enforcement control rationally moves up the list ahead of searching for evidence on devices securely held by law enforcement. As Judge Ingram said, that circumstance was "more exigent." DE 90 at 11.

Witherspoon finally attempts to link the twenty-four-day delay with his inability to post bond. *See* DE 92 at 12. He avers he could have "benefit[ed] greatly" from a list of contacts that could be used to ask for help, including funds to post bond, perhaps immediately from initial state custody, to secure release. *See id.* at 5. The Court doesn't see the connection. For one, Witherspoon admits earlier that "authorities at the jail housing Witherspoon would not have allowed him to possess his cell phones or dash camera even if he requested it." *See id.* at 4, 5 ("It is true that an inmate cannot legally possess a cell phone in a Kentucky jail. Kentucky law specifically describes

10

unauthorized cell phones as 'dangerous contraband.' KRS 520.010(3)."). Thus, even absent the Government's seizure, Witherspoon would have been right where he started: detained without ready access to his devices. Second, outside of blanket assertions, nothing suggests the Government's seizure prevented Witherspoon from posting bond. As previously noted, Witherspoon never requested that the devices be returned to his possession or released to a third party, *see* DE 95 at 23, 26–27, and further still, Lewis testified that Witherspoon very soon after his arrest began contacting individuals outside the prison using permitted means. *See id.* at 26. In short, Witherspoon offers the Court no reason to believe that the seizure of his cellphones was a basic impediment to posting bond. As Judge Ingram aptly observed, "this case will not be decided on hypothetical counterfactuals." DE 90 at 7.

## IV.   Conclusion

Witherspoon fails to show the constitutional unreasonableness of the Government's conduct. Accordingly, the Court **ADOPTS** Judge Ingram's report and recommendation, DE 90, **OVERRULES** Witherspoon's objections, DE 92, and **DENIES** Witherspoon's motion to suppress, DE 66.

This the 17th day of March, 2025.

Signed By:
*Robert E. Wier*  REW
**United States District Judge**

11